688 So.2d 298 (1996)
Darcus WRIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 85070.
Supreme Court of Florida.
November 21, 1996.
Rehearing Denied February 19, 1997.
Richard L. Jorandby, Public Defender and Jeffrey L. Anderson, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for Appellant.
Robert A. Butterworth, Attorney General and Sara D. Baggett, Assistant Attorney General, West Palm Beach, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty on Darcus Wright. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions but reverse the death sentence and remand for life imprisonment without possibility of parole for twenty-five years.
Darcus Wright and Allison Prescod separated after being married for several years and Allison and the children moved in with her parents, Carmelita and Winston Prescod. Wright became angry when Allison and her family refused to let him visit his children, and on October 11, 1993, he went to the *299 Prescod home, broke through the plate-glass door, shot Allison twice, collected the children, kicked down the door to Carmelita's room, threatened her with the gun, told her "[Allison] is dead," and then left. Shortly afterwards, Wright and the children approached a police officer and Wright said, "I want to turn myself in because I just shot my wife for trying to take my kids."
Wright was charged with first-degree murder, burglary, and aggravated assault, and was convicted of first-degree murder, burglary, and assault. During the penalty phase of the trial, Allison's sister, Carol Pate, testified that several years earlier Wright had shot her in the wrist during a dispute over Allison, and defense expert Dr. Cheshire testified that Wright has organic brain damage and poor reasoning skills. The court followed the jury's eight-to-four vote and imposed a sentence of death based on two aggravating circumstances,[1] one statutory mitigating circumstance,[2] and numerous nonstatutory mitigating circumstances.[3] The court imposed life imprisonment on the burglary charge and sixty days in jail on the assault charge. Wright raises twenty-six issues.[4]
When State witnesses used displays during the guilt phase of the trial, the prosecutor, defense counsel and judge moved closer to the jury box to see better. Wright, however, remained seated and although he could hear the testimony, he could not see the displays well. Wright now claims that this violated his right to a fair trial. We cannot agree. Because Wright failed to bring this matter to the court's attention until after the State had presented its entire case, this claim was not preserved for review. Had defense counsel timely objected, the court could have easily altered its procedure without compromising the whole trial. As to Wright's claim that he timely told his lawyer but the lawyer did nothing, this allegation cannot be substantiated on this record. We find no error.
During jury selection, defense counsel asked for permission to approach the bench with the prosecutor and notified the court that Wright had told him that the prosecutor *300 had drawn a hangman's noose on her legal pad and shown it to Wright. The prosecutor denied showing her pad to Wright and the following transpired:
THE COURT: Let me ask this: If this were a situation where your client was about to take the witness stand it would present different issues. We're doing voir dire here. In looking at your client, he does not appear to be changed in demeanor at all. Without making a factual finding, let me ask that that type of artwork not occur in this courtroom. If it doesn't occur, it can't be seen by anyone, whether intentional or otherwise; but it has no place in the courtroom.
. . . .
THE COURT: If I hold an evidentiary hearing and if it turned out it was correctat this stage of the proceedings if it turned out it was correct, is there any prejudice here: Not from your client's perspective, from you as a lawyer. Again, Mr. Lamos, I recognize that you're in a very difficult position here because you're dealing with I guess what can be accurately described as a difficult client, and I'm taking that into account.
But as an officer of the Court, assuming for the moment that Ms. Denton is a wonderful artist and drew it and showed it to your client; okay? At this stage of the proceedings where there is no visible reaction from your client that would taint him in the eyes of the jury, and in fact no visible reaction from your client, would any remedy be necessary other than the one that I just mentioned?
MR. LAMOS: What was that remedy, please?
THE COURT: Just saying, folks, if it's occurring, don't do it. Artwork can be done other than in the courtroom. Is there any other remedy?
MR. LAMOS: No, I cannot envision another remedy; however, I think that it is, if true, a very sad and pathetic commentary, simply because it's a total lack of humanity.
THE COURT: Now, again I don't need to make the factual determination
MR. LAMOS: I know.
Wright claims that his rights were violated because he was not present at the bench during the above discussion. We disagree. Wright was present in the courtroom throughout this discussion and it was defense counselnot the prosecutor or the court who initiated the bench conference. Defense counsel gave no hint that his client wished to be present at the bench. This discussion of the prosecutor's doodling was not a critical stage of the proceedings requiring Wright's presence. See generally Hardwick v. Dugger, 648 So.2d 100 (Fla.1994). As to Wright's claim that the court failed to conduct an adequate inquiry into this issue, the record shows that the court did conduct a reasonable inquiry and defense counsel acquiesced in the court's resolution of the matter. We find no error.
Prior to jury selection, the judge called the lawyers to the bench and notified them that the trial would last approximately two weeks, running through the Labor Day holiday and several weekends. The judge and lawyers then discussed and agreed upon the preliminary excusal of a number of venirepersons for hardship reasonse.g., prior personal commitments, job conflicts, day-care requirements, and medical problems. Wright claims that this violated his rights under Coney v. State, 653 So.2d 1009 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 315, 133 L.Ed.2d 218 (1995), because he was not present at the bench. We disagree.
In Coney, we held that "[t]he defendant has a right to be physically present at the immediate site where pretrial juror challenges are exercised." Id. at 1013. This holding is inapplicable here, however, because no pretrial challenges were being exercised. This Court explained in Remeta v. State, 522 So.2d 825 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988):
It is important to understand the distinction between the general qualification of the jury by the court and the qualification of a jury to try a specific case. In the former, the court determines whether prospective jurors meet the statutory qualification standards or whether they will not *301 qualify because of physical disabilities, positions they hold, or other personal reasons. The general qualification process is often conducted by one judge, who will qualify a panel for use by two, three, or more judges in multiple trials. Counsel or a defendant does not ordinarily participate in this type of qualification process, although neither is excluded from doing so. In many instances, counsel and the defendant are not present....
Id. at 828. In short, the general qualification process is not "a critical stage of the proceedings requiring the defendant's presence." Robinson v. State, 520 So.2d 1, 4 (Fla.1988). We find no error.
Wright claims that imposition of the death penalty in this case is disproportionate. We agree. The present record is devoid of evidence of prior violent offenses or other aggravation committed by Wright unrelated to the ongoing struggle between him and Allison. The evidence in mitigation, on the other hand, is copious. The trial court found as a statutory mitigating circumstance that Wright was under the influence of extreme emotional disturbance at the time of the crime. The record shows he was extraordinarily overwrought at the thought of losing his children.
The trial court found numerous nonstatutory mitigating circumstances: Wright cooperated with police, was remorseful, had mental health problems; Darcus and Allison had a history of conflict; the crime arose in a heated dispute, in the course of an on-going quarrel, following a previous altercation; Wright had a good military and employment record; Wright had regularly attended church; Wright had been mentally abused by his stepfather and often had to live with friends; and Wright had done good deeds for friends.
We find Wright's death sentence disproportionate. See, e.g., Maulden v. State, 617 So.2d 298, 303 (Fla.1993) (death sentence reversed where two aggravating circumstances were present, defendant had no prior violent crimes unrelated to the present offenses, and defendant believed another man "was replacing him as `father figure'" to his children); Blakely v. State, 561 So.2d 560 (Fla.1990) (death sentence disproportionate where two aggravating circumstances were present, defendant had no prior significant criminal history, and defendant "had reached his breaking point" in dispute over children).
The remainder of Wright's claims either were not preserved,[5] are without merit,[6] or are moot.[7] Based on the foregoing, we affirm the convictions and sentences except for the death sentence, which we vacate. We remand for imposition of a life sentence without possibility of parole for twenty-five years on the murder count.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs as to guilt and dissents as to sentence.
NOTES
[1] The court found that Wright had been convicted of a prior violent felony and that the murder was committed during a burglary.
[2] The court found that the murder was committed while Wright was under the influence of extreme mental or emotional disturbance.
[3] The court found the following nonstatutory mitigating circumstances: Wright was remorseful; Wright had cooperated with police; Wright had mental health problems; the crime arose in a heated domestic dispute; there had been a history of conflict between Wright and Allison; the crime arose from an on-going quarrel; there had been a previous altercation between Wright and Allison; Wright had a good military and employment record; Wright had regularly attended church; Wright had been mentally abused by his stepfather and often lived with friends; Wright had done several good deeds for friends.
[4] Wright raised the following claims: 1) He could not see the State's displays at trial; 2) he was absent from a sidebar conference; 3) the court failed to inquire into the prosecutor's drawing of a hangman's noose; 4) he was absent from several bench conferences; 5) he was absent from a bench conference in which several jurors were excused; 6) the jury should not have been instructed on stealthy entry; 7) the court should not have overruled his objection to the State's use of a peremptory challenge; 8) the court should not have denied his proposed instructions on a good faith belief defense; 9) the court should not have allowed the State to obtain Wright's research for his defense from jail officials; 10) the instruction on premeditated murder was faulty; 11) his statement should have been suppressed; 12) the indictment should not have been constructively amended; 13) the State should not have been allowed to proceed on felony-murder when the indictment did not so state; 14) the death sentence is disproportionate; 15) the court should have granted his request for a continuance to obtain the presence of penalty phase witnesses; 16) he was absent from a penalty phase bench conference; 17) the court failed to inquire into his waiver of mitigation; 18) the court should have found substantial impairment as a mitigator; 19) the court should have found duress as a mitigator; 20) the court failed to conduct an adequate inquiry into Wright's claim that counsel failed to contact witnesses; 21) the court failed to conduct an adequate inquiry into Wright's request to discharge counsel; 22) the felony murder aggravator is invalid; 23) the court failed to adequately define nonstatutory mitigators to the jury; 24) the court failed to delete "extreme" and "substantial" from the instructions on mitigators; 25) the court erred in allowing admission of evidence of an offense for which Wright had been acquitted; 26) the record is incomplete.
[5] Issues 6), 7), and 10) were not preserved.
[6] Issues 4), 8), 9), 11)-13), and 21) are without merit.
[7] Issues 15)-20) and 22)-26) are moot.