896 So.2d 725 (2005)
Roderick Michael ORME, Appellant,
v.
STATE of Florida, Appellee.
Roderick Michael Orme, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC02-2625, SC03-1375.
Supreme Court of Florida.
February 24, 2005.
*728 D. Todd Doss, Lake City, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General and Meredith Charbula, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Roderick Michael Orme, a prisoner under sentence of death, appeals an order of the trial court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons more fully explained below, we reverse in part the trial courts order denying postconviction relief and remand for a new *729 penalty phase proceeding. We deny Orme's petition for habeas corpus relief.

STATEMENT OF THE FACTS
The facts of this case are set forth in Orme v. State, 677 So.2d 258, 260-61 (Fla.1996), as follows:
Roderick Michael Orme had an extensive history of substance abuse for which he previously had sought treatment at a recovery center in Panama City. On the morning of March 4, 1992, Orme suddenly appeared at the center again, despite a lapse of about a year since his prior treatment. He was disoriented and unable to respond to questions, but he did manage to write a message. It was "LEE'S MOT RM15."
While a breathalyzer returned negative results, Orme's blood tested positive for cocaine and he was showing signs of acute cocaine withdrawal. He was cold, his face was flushed, and he was exhibiting symptoms like delirium tremens. An attending physician placed Orme in intensive care for thirty hours. Illegal barbiturates were found in Orme's possession.
Lee's Motel was located only a few blocks from the recovery center. Someone at the center telephoned the motel and said that a man who sounded hysterical had said to check room 15. The owner did so and found the body of a woman who had been badly beaten.
Semen was found in the victim's orifices, but DNA testing could not identify a DNA match. One sample taken from the victim's panties, however, held material that matched the pattern of Orme's DNA. Orme's underpants also had a mixed blood stain matching both Orme and the victim's genotype. Orme's fingerprints were found in the motel room, and his checkbook and identification card were found in the victim's car, which was parked outside.
The cause of death was strangulation. There were extensive bruising and hemorrhaging on the face, skull, chest, arms, left leg, and abdomen, indicating a severe beating. The abdominal hemorrhaging extended completely through the body to the back and involved the right kidney. Jewelry the victim always wore was missing and was never found. Police later identified the body as that of Lisa Redd, a nurse.
Orme acknowledged that he had summoned Redd to his motel room the day she was killed because he was having a "bad high" after free-basing cocaine. Orme and Redd had known each other for some time, and Orme called her because she was a nurse.
On March 4, 1992, Orme told police he had last seen Redd twenty minutes after she arrived at his motel. Orme said she had knocked a crack pipe from his hands, apparently resulting in the loss of his drugs. He left to go partying soon thereafter. In this statement, he also said that this was the first time he had abused cocaine since 1990 and that he did not remember being at the addiction recovery center.
The following day Orme gave a lengthier statement to police. In this one, he said that Redd had arrived at his motel room between 9 and 10 p.m. She slapped his crack pipe out of his hands and swept several pieces of crack into the toilet. Orme said he then took the victim's purse, which contained her car keys, and drove away in her car. Orme said he left and returned several times and that it was still dark when he realized something was wrong with Redd. The last time he returned, however, he could not enter because he had left the motel key inside the room.
Orme was arrested on March 6, 1992, after his release from the hospital. On *730 March 26, 1992, he was charged by indictment with premeditated or felony murder, robbery, and sexual battery.
At trial, Orme testified that Redd had arrived at his motel room at 7, 8, or possibly 8:30 p.m. He again said he returned to the motel room at some point. At this time he realized Redd's body was cold and that something was wrong. But he said the next thing he remembered was being in the hospital.
Robert Pegg, a cab driver, testified at trial that he had picked up Orme at Lee's Motel around 8 p.m.
A man who lived across from the motel, Joseph Lee, also testified. He said that he generally kept track of what was happening at the motel and had first noticed the victim's automobile there around 9:30 or 10 p.m. Lee said he saw Orme leave and return several times. Before going to bed around 2 a.m., Lee said he saw Orme leave in the victim's car once more.
Another witness, Ann Thicklin, saw someone slowly drive the victim's car into Lee's Motel around 6:15 a.m.
The jury convicted Orme on all counts and recommended death on a vote of seven to five. The defense waived the mitigator of no prior criminal history and asked for the jury to be instructed on the age mitigator, the two statutory mental mitigators (substantial impairment and extreme emotional disturbance), and the catch-all mitigator. The state asked for three instructions: murder committed in the course of a sexual battery; heinous, atrocious, or cruel; and pecuniary gain.
Shortly before sentencing, the defense asked the court to consider the "no significant prior criminal history" factor based on the presentence investigation ("PSI") and penalty-phase testimony. The defense stated that it had waived the factor to prevent the State from introducing a rebuttal witness about an alleged prior sexual assault committed by Orme.
The trial court stated that it had considered this motion. Shortly thereafter the judge sentenced Orme to death, finding all three aggravators argued by the State. In mitigation, the trial court found both statutory mental mitigators and gave them "some weight," but concluded they did not outweigh the case for aggravation. The Court rejected the other factors argued by Orme: his age (30), his love for his family, an unstable childhood, potential for rehabilitation, and good conduct while awaiting trial.
This Court affirmed Orme's conviction of first-degree murder and the sentence of death.

MOTION FOR POSTCONVICTION RELIEF
In his amended motion for postconviction relief, Orme raised twenty-five claims. The trial court granted an evidentiary hearing on four claims of ineffective assistance of counsel: failing to present convincing evidence to the jury during both the guilt and penalty phases that Ormes bipolar disorder rendered him legally insane or unable to form the requisite intent to commit first-degree murder; failing to attend the general qualification of the jury pool; failing to request a continuance of the trial; and failing to present more evidence in mitigation during the penalty phase. After the evidentiary hearing, the trial court denied relief, finding that Orme failed to meet the standard of ineffectiveness set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This is an appeal of the denial of postconviction relief. Orme raises three claims in his appeal. He argues that the trial court erred in denying his ineffective assistance of counsel claims *731 for trial counsel's failure to present evidence of Orme's diagnosis of bipolar disorder, that his death sentence is unconstitutional pursuant to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and its progeny, and that the general jury qualifications procedure in Bay County, where he was tried, was unconstitutional. For the reasons more fully discussed below, we grant relief on Orme's first claim involving his diagnosis of bipolar disorder and remand for a new penalty phase proceeding.

Ineffective Assistance of Counsel
The first issue Orme presents on appeal is whether he was denied effective assistance of counsel at both the guilt and penalty phases of his trial because evidence of his mental state was not thoroughly investigated and provided to the jury and judge. We find that Orme was denied effective assistance of counsel during the penalty phase of his trial because trial counsel failed to investigate and present in mitigation evidence of Orme's bipolar diagnosis. Such evidence existed, and had it been presented, there is a reasonable probability that the result of the penalty phase proceedings would have been different. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
To establish a claim of ineffective assistance of counsel, a defendant must prove two elements: first, that counsels performance was deficient; and second, that the deficient performance prejudiced the defense. See id.; see also Rutherford v. State, 727 So.2d 216 (Fla.1998). In establishing prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Regarding counsel's responsibility to investigate and inquire into matters that may be helpful to his client's case, the Strickland Court also said that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691, 104 S.Ct. 2052; see also Stevens v. State, 552 So.2d 1082 (Fla.1989). As this Court has said, "the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated." State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002). In determining whether the penalty phase proceedings were reliable, "[t]he failure [of counsel] to investigate and present available mitigating evidence is a relevant concern along with the reasons for not doing so." Asay v. State, 769 So.2d 974, 985 (Fla.2000) (quoting Rose v. State, 675 So.2d 567, 571 (Fla.1996)) (alterations in original). Thus, when evaluating claims that counsel was ineffective for failing to present mitigating evidence, the defendant must show that counsel's ineffectiveness "deprived the defendant of a reliable penalty phase proceeding." Id. (quoting Rutherford, 727 So.2d at 223). Moreover, as the Supreme Court recently stated in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003):
[O]ur principal concern in deciding whether [counsel] exercised "reasonable professional judgmen[t]" is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence ... was itself reasonable. In assessing counsel's investigation, we must conduct an objective review of their performance, measured for "reasonableness under prevailing professional norms," which includes a context-dependent consideration of the challenged conduct as seems "from counsel's perspective at the time."
*732 Id. at 522-23, 123 S.Ct. 2527 (citations omitted) (quoting Strickland, 466 U.S. at 688-89, 691, 104 S.Ct. 2052).
Orme argues that he was deprived of a reliable penalty phase because trial counsel had not thoroughly investigated and presented evidence of his bipolar disorder. He argues that had counsel done so, his intoxication defense would have been bolstered, and the jury, whose recommendation of death was by a seven-to-five vote, would not have recommended death. Although we do not agree with Orme that the result of the guilt phase trial would have been different, we do agree that the failure to present this evidence deprived Orme of a reliable penalty phase in which we have confidence.
The trial court concluded in its order denying postconviction relief that Orme's defense counsel acted reasonably by not presenting bipolar disorder as a defense during the guilt phase and as a mitigator during the penalty phase, stating that there was some disagreement on how to diagnose Orme at the time of trial and at the postconviction proceeding, even with the additional information presented. The court noted that because the experts agreed that Orme was addicted to cocaine, and the drug addiction was a factor in his murder trial, it was reasonable for trial counsel to present only this evidence. We disagree and find that counsel's performance was deficient in both the investigation of Orme's mental health and the presentation of evidence of Orme's mental illness to the jury.
In Wiggins, the United States Supreme Court revisited the issue of ineffective assistance of counsel for failure to investigate. See Wiggins, 539 U.S. 510, 123 S.Ct. 2527. The defense counsel in Wiggins had the presentence investigation (PSI) report and the Baltimore City Department of Social Services (DSS) reports which discussed, in a limited manner, the degree of abuse Wiggins suffered as a child. Counsel chose not to further investigate Wiggins' background and relied solely on the PSI and DSS reports. Postconviction counsel later uncovered the extent of abuse Wiggins suffered, which was far greater than what was discussed in either the PSI or the DSS reports. The Court found that trial counsel had abandoned their investigation of Wiggins' background after only a rudimentary knowledge of his history from a narrow set of sources. The Court also found that the scope of the investigation was unreasonable in light of the information contained in the reports and that "any reasonably competent attorney would have realized that pursuing these leads was necessary to making an informed choice among possible defenses." Wiggins, 539 U.S. at 525, 123 S.Ct. 2527. Thus, the Court concluded, "[i]n assessing the reasonableness of an attorney's investigation ... a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Id. at 527, 123 S.Ct. 2527. The Court further stated that "Strickland does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy." Id. (citing Strickland, 466 U.S. at 691, 104 S.Ct. 2052).
Even prior to Wiggins, this Court found that failure to investigate mitigation can support a Strickland ineffective assistance of counsel claim. See Ragsdale v. State, 798 So.2d 713 (Fla.2001); Rose v. State, 675 So.2d 567 (Fla.1996). In Ragsdale, this Court found that counsel was ineffective and there was a reasonable probability that the result of the penalty phase would have been different but for counsel's failure to present evidence of the defendant's *733 abusive childhood and history of drug and alcohol abuse. Although the limited evidence presented on Ragsdale's behalf involved some testimony regarding head trauma, no evidence was presented to explain the effects of the head trauma. Similarly, in Rose, this Court found that counsel, who had not previously handled a death penalty case, failed to investigate the defendant's background and obtain records relating to the defendant's mental illness. At the postconviction evidentiary hearing, substantial mitigation was presented concerning Rose's childhood of poverty, abuse, and neglect. Additional evidence was presented indicating Rose's diminished learning capacity, head injuries, and chronic alcoholism. In contrast, no mitigation evidence was presented at the penalty phase. Instead, without investigating his options, counsel chose to present an accidental death theory to the jury, a theory that even counsel admitted was not viable. Under these circumstances we said counsel's failure to investigate and present substantial mitigation evidence "deprived Rose of a reliable penalty phase proceeding." 675 So.2d at 574.
In this case, there was substantial mental mitigation available to trial counsel. Orme had been diagnosed with bipolar disorder, and counsel was aware of the diagnosis. Orme's initial defense team, Michael Stone and Pamela Sutton, feared that Orme was suicidal, and they contacted Dr. Clell Warriner, a psychologist, to evaluate Orme. Dr. Warriner then helped to arrange for Dr. Ralph W. Walker, II, a psychiatrist, to evaluate Orme and prescribe medication. Dr. Walker diagnosed Orme with bipolar disorder, prescribed Lithium, Xanax, and Prozac, and informed Stone of this diagnosis in a letter. Dr. Walker was gravely ill with cancer and during the months before trial was on medical leave. During this time, another prison physician renewed Orme's prescriptions. In October 1992, after conducting initial interviews with Orme's family and friends, Stone and Sutton abruptly left their jobs at the public defender's office. Trial was set for the following February.
Attorney Walter Smith, who had met Orme during the initial intake process, took over the case. Smith received the entire file on this case, including the letter from Dr. Walker indicating his bipolar diagnosis. Smith was aware of the diagnosis and admitted that it would have had a significant effect on Orme's case. Smith testified that he did not present evidence of Orme's bipolar diagnosis because he had no other information to corroborate it. As he put it, he did not want his expert to stick his neck out and get his head cut off. However, he did not conduct follow-up interviews with Orme's family and friends to determine if Orme had exhibited behavior in accord with a bipolar diagnosis. The medical experts testified at the postconviction hearing that corroborating data from family, friends, and others observing any mood swings, hypomania, or mania in any form would have supported a bipolar diagnosis.
Also important in this analysis is the fact that Smith did not inform his trial experts that Orme had been diagnosed with bipolar disorder and the fact that he did not provide the experts with the prison medical records that would have shown the medications prescribed to Orme indicating such a diagnosis. Orme's experts never knew that such a diagnosis had been made. Smith testified that he thought he would have provided the information to his experts. He stated that he did not know why he did not provide the information.
Dr. Thomas McClane and Dr. Warriner testified at Orme's trial and at the postconviction hearing. Dr. McClane stated that in preparation for trial he reviewed Orme's hospital records from the 1980s, tapes and transcripts of interviews, records from *734 drug treatment, psychological testing records, and the autopsy report of the victim. He conducted one examination of Orme on the evening before the penalty phase was to begin. At trial, he testified that Orme suffered from "mixed personality disorder with chronic intermittent depression and addiction to cocaine." At the postconviction hearing, Dr. McClane testified that he would normally see a patient more than one time. He also stated that evaluating the patient once, on the eve of trial, was not the normal procedure. Orme told Dr. McClane that he had been prescribed Lithium. Lithium is prescribed to treat bipolar disorder. Dr. McClane testified that patients often mistake the medications they are taking. He stated that he made a notation to check the prison medical records to confirm whether Orme was, in fact, taking Lithium. There is no evidence that Dr. McClane checked the prison medical records before or during Orme's trial. In preparation for the postconviction proceeding, however, Dr. McClane was given Orme's prison medical records and a copy of the letter from Dr. Walker indicating the diagnosis of bipolar disorder. Dr. McClane was also given affidavits prepared by Orme's friends and family which provide anecdotal information about Orme's past behavior indicative of someone with bipolar disorder.[1] Dr. McClane stated that if he had received this type of information prior to trial, he would have diagnosed Orme as probable bipolar in a depressed phase. Dr. McClane stated that if he had made this diagnosis, he would then have been able to link Orme's major mental illness to his drug addiction because statistically bipolars are significantly more likely to abuse drugs.
Likewise, Dr. Warriner does not remember receiving any information indicating that Orme was bipolar. Dr. Warriner testified at trial that Orme was a depressed cocaine addict and anxious about his situation. At the postconviction hearing, Dr. Warriner stated that he was not asked to provide a diagnosis at trial; he was merely asked to describe Orme's symptoms. Dr. Warriner testified that had he been asked to provide a diagnosis, he would likely have diagnosed Orme with "bipolar disorder, mixed type."
In addition to Dr. Warriner and Dr. McClane, Orme called two additional medical experts to testify at the postconviction hearing that Orme was indeed bipolar, and to explain the significance this diagnosis would have had for his intoxication defense. Dr. John Herkov, a psychologist specializing in addiction, evaluated Orme *735 in 2001. He diagnosed Orme with "bipolar disorder, not otherwise specified." He stated that given the nature of the illness, it was not unusual for a person to be diagnosed with bipolar at thirty years of age. He stated that a person with bipolar has periods of relatively normal behavior, but there are also manic phases and depressive phases, and a person can cycle through these phases rapidly or slowly. He noted a history of mood swings and other behaviors indicative of bipolar disorder. In addition to the anecdotal history, Dr. Herkov considered Dr. Walker's diagnosis and the prescriptions for Lithium, Xanax, and Prozac, and Orme's description of certain sexual compulsions indicative of manic behavior. He also supported his diagnosis by post-trial medical records showing Orme had seen mental health providers in prison for grandiose manic behavior, auditory hallucinations, depression, irritability, compulsiveness, and mood instability, all symptoms consistent with bipolar disorder. Dr. Herkov additionally testified that there is a link between bipolar disorder and drug abuse, stating that persons suffering from bipolar disorder have a higher incidence of substance abuse than anyone else.
Dr. Michael Maher, a forensic psychiatrist, also testified. He saw Orme in 2001 and reviewed Orme's medical records. He stated he would diagnose Orme with polysubstance abuse and bipolar disorder. When asked why, after all the drug treatment and counseling Orme had received prior to committing this murder, no one before Dr. Walker had made this diagnosis, Dr. Maher stated that substance abuse treatment gives little focus to the underlying psychiatric disorders. He opined that Orme's relative stability since being in prison is attributed to the fact that he is confined for twenty-three hours a day and there is a lack of stimuli. The prison medical records do show, however, that Orme suffers insomnia and has been prescribed the psychotropic drug Mellaril, which is indicative of bipolar disorder.
The State's expert medical witness at the postconviction hearing was Dr. Harry McClaren. Dr. McClaren testified that Orme suffered from "depressive disorder, not otherwise specified." Dr. McClaren surmised that other than Dr. Walker's diagnosis, the most common diagnosis by all the medical experts who saw Orme was major depression, and that nothing in Orme's history warranted treatment for bipolar disorder. He stated that Orme had had successes in his life, he had not been hindered by mental illness, and that any mood swings could be attributed to Orme's drug abuse. However, Dr. McClaren did not meet with or personally examine Orme.
We conclude that under these circumstances, counsel's decision to conduct no further investigation of Orme's bipolar diagnosis and subsequent decision to forego presenting this defense amounted to deficient performance. Counsel knew his client had been diagnosed with a major mental illness and he admitted such a defense would have been significant, yet he offered no reasonable explanation for not pursuing that lead. A diagnosis of a major mental illness would reasonably require further investigation, and counsel should have realized that pursuing this lead was necessary to make an informed choice about whether to present evidence of Orme's mental illness.
Having determined that trial counsel's performance was deficient in failing to investigate and present the fact of Orme's diagnosis of bipolar disorder, we must next determine whether such deficiencies prejudiced Orme. See Stewart v. State, 801 So.2d 59, 65 (Fla.2001) (finding that Strickland requires the establishment of both prongs to establish ineffective assistance of counsel). In the guilt phase, *736 Orme's defense was that he was too intoxicated to have formed the requisite intent to support a conviction of capital first-degree murder. Orme was charged with both premeditated and felony murder. There was a general verdict in this case, and Orme was found guilty, not only of first-degree murder, but of burglary and sexual battery. Even if counsel's performance was deficient and bipolar disorder would have bolstered the intoxication defense, the guilty verdict on the sexual battery charge would not have been affected. Sexual battery is a general intent crime to which voluntary intoxication is not a defense. See Sochor v. State, 619 So.2d 285, 290 (Fla.1993) (rejecting claim that trial court committed fundamental error by not instructing the jury on voluntary intoxication as a defense to felony murder based on kidnapping, based in part on the fact that there was sufficient evidence of sexual battery, a general intent crime to which voluntary intoxication is not a defense). If Orme had offered evidence of his bipolar disorder to further support his voluntary intoxication defense, as he argues should have been done, the jury could not have relied on this defense as to the sexual battery charge. Thus, our confidence in the result of the guilt phase has not been undermined. Given the general verdict, Orme cannot show that he was deprived of a reliable guilt phase proceeding.
We do find, however, that Orme was deprived of a reliable penalty phase. During the penalty phase, evidence of Orme's intoxication was presented as mitigation. The intoxication evidence involved the consumption of cocaine, pills, and alcohol. The State repeatedly told the jury that it should not let Orme "stand behind his crack pipe" or not be responsible for his crime because he was high on drugs. Although the trial court found as mitigating factors that Orme's capacity was substantially impaired and that he was under the influence of extreme mental or emotional disturbance, the trial court only gave them "some weight."
Orme argues that testimony linking his drug use to his bipolar disorder would undermine the State's argument that he "hid" behind his crack pipe, because it would explain to the jury that he was ill and that the mental illness made his addiction even greater. We agree. There is no dispute that bipolar disorder is a serious and significant diagnosis. Additional testimony in support of the intoxication and its causes and effects may have warranted greater weight, and the resulting weighing of mitigation and aggravation would have been different. Thus, the fact that the jury did not hear the evidence of Orme's bipolar disorder combined with the jury's penalty phase vote of seven to five undermines our confidence in the result of the penalty phase. Therefore we remand this case for a new penalty phase proceeding.[2]

Ring Issue
We affirm the trial court's order denying postconviction relief based on the Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), claim. The issues *737 raised in Orme's Ring claim have been addressed and rejected by this Court. See Fennie v. State, 855 So.2d 597, 607 n. 10 (Fla.2003) (rejecting the claim that Florida's death penalty statute is unconstitutional because it fails to require aggravators to be charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt), cert. denied, 541 U.S. 975, 124 S.Ct. 1877, 158 L.Ed.2d 471 (2004); Doorbal v. State, 837 So.2d 940, 963 (Fla.) (rejecting the argument that a jury's recommendation of death must be unanimous and stating that a prior violent felony aggravator based on contemporaneous crimes charged by indictment and on which defendant was found guilty by unanimous jury clearly satisfies the mandates of the United States and Florida Constitutions), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003); Kormondy v. State, 845 So.2d 41 (Fla.) (rejecting the claim that death qualifying aggravators must be alleged in the indictment and individually found by a jury), cert. denied, 540 U.S. 950, 124 S.Ct. 392, 157 L.Ed.2d 283 (2003). Like Doorbal, Orme was not only convicted of first-degree murder, he was also convicted of two additional violent felonies  robbery and sexual battery.

Jury Qualification Procedure
We also affirm the denial of relief on Orme's claim that the jury qualification procedure in Bay County was unconstitutional. Orme claims that neither he nor his attorney was present at the general qualification proceeding. "Petitioner's challenge to the jury qualification procedure is a matter that should have been raised by objection at trial and argument on appeal...." Thomas v. Wainwright, 495 So.2d 172, 175 (Fla.1986). Orme raises this claim for the first time in this postconviction proceeding. The claim is therefore procedurally barred. Furthermore, the general jury qualification procedure is not a critical stage of trial at which the defendant must be present. See Bates v. State, 750 So.2d 6 (Fla.1999); Wright v. State, 688 So.2d 298 (Fla.1996). In addition, the record does not support Orme's claim that counsel did not attend. There is no record of the proceedings, and defense counsel could not remember whether he attended.

PETITION FOR WRIT OF HABEAS CORPUS
Orme raises eight issues in his petition for writ of habeas corpus. He argues that: (1) appellate counsel was ineffective for failing to raise on appeal his absence from critical stages of his trial; (2) appellate counsel was ineffective for failing to argue that the prosecutor engaged in misconduct rendering his conviction and sentence fundamentally unfair; (3) appellate counsel was ineffective because he should have argued on appeal that certain crime scene photos allowed into evidence were gruesome and unfairly prejudicial; (4) he is innocent of first-degree murder and of the death penalty; (5) the jury instructions were incorrect and erroneously shifted the burden of proof; (6) the jury was given inadequate guidance concerning the aggravating circumstances, rendering his sentence of death fundamentally erroneous; (7) the prosecutor unconstitutionally introduced and relied upon nonstatutory aggravating circumstances; and (8) the jury's sense of responsibility toward its sentencing obligations was unconstitutionally diluted. For the reasons that follow, we deny habeas relief.
Claims of ineffective assistance of appellate counsel are properly raised in a petition for writ of habeas corpus addressed to the appellate court that heard the direct appeal. See Rutherford v. Moore, 774 So.2d 637 (Fla.2000). Such claims must be analyzed using the same two-pronged test promulgated in Strickland. *738 That is, we must determine whether counsel's performance was deficient, and, if so, we must determine if the deficient performance prejudiced the defendant. In Rutherford we said:
If a legal issue "would in all probability have been found to be without merit" had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective. Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994); see, e.g., Kokal v. Dugger, 718 So.2d 138, 142 (Fla.1998); Groover, 656 So.2d at 425. This is generally true as to issues that would have been found to be procedurally barred had they been raised on direct appeal. See, e.g., Groover, 656 So.2d at 425; Medina v. Dugger, 586 So.2d 317, 318 (Fla.1991).
Id. at 643; accord Spencer v. State, 842 So.2d 52, 74 (Fla.2003). This principle is applicable to this case unless the error is deemed to be fundamental error. Fundamental error is an error that "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1996) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).

Absence from Critical Stages of Trial
Orme claims appellate counsel was ineffective for failing to raise on appeal the fact that he was involuntarily absent from two bench conferences which he claims were critical stages of his trial. He further argues the issue should have been raised on appeal, although not preserved by objection, because the issue amounts to fundamental error. At one conference, the State and defense counsel agreed upon penalty phase instructions. At another conference, the trial court denied one of Orme's proposed jury instructions.[3] We deny relief because counsel is not ineffective for failing to raise nonpreserved, nonfundamental issues.
A defendant has a constitutional right to be present at all "crucial stages of his trial where his absence might frustrate the fairness of the proceedings." Garcia v. State, 492 So.2d 360 (Fla.1986). However, the right "does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed." United States v. Vasquez, 732 F.2d 846, 848 (11th Cir.1984); see also Rutherford v. Moore, 774 So.2d 637 (Fla.2000); Cole v. State, 701 So.2d 845 (Fla.1997) (finding that the constitutional right to be present does not extend to conferences involving purely legal matters because the defendant's presence would be of no assistance to counsel). Furthermore, Orme has not shown that anything discussed during the bench conferences required his consultation. He has failed to demonstrate any prejudice from his absence. Thus, he has not shown that his failure to be present at the bench conferences affected the validity of the trial itself to the extent that the verdict could not have been obtained. Appellate counsel was not ineffective for failing to raise a claim that was not preserved for appeal and that did not amount to fundamental error.

Prosecutorial Comments
Orme next claims that the prosecutor engaged in an improper "golden rule" argument *739 by asking jurors to take five minutes of silence for the victim when they retired to the jury room. Orme also argues that the prosecutor improperly encouraged the jurors during closing argument when he told them to "do their duty for the community" and that their decision was on behalf of all citizens. Finally, Orme contends that the prosecutor impermissibly offered victim impact testimony in the guilt and penalty phases of the trial when he told the jury that the victim was a young nurse just finishing her studies and trying to raise a son, and that she was killed when she tried to help a friend who complained of being sick. Trial counsel did not object to any of these statements. Orme alleges the prosecutor's comments were so egregious that they constituted fundamental error, and the issue should have been raised on appeal. Therefore, he argues, appellate counsel was ineffective for failing to raise the issue.
As we stated above, appellate counsel will not be deemed ineffective for failing to raise issues not preserved for appeal. See Williamson v. Dugger, 651 So.2d 84, 86-87 (Fla.1994); Medina v. Dugger, 586 So.2d 317, 318 (Fla.1991). The only exception is where appellate counsel fails to raise a claim which, although not preserved at trial, rises to the level of fundamental error. See Roberts v. State, 568 So.2d 1255, 1261 (Fla.1990). Orme has failed to demonstrate that the prosecutor's comments were error, much less fundamental error.
Although the prosecutor in Ormes case asked the jury to take five minutes to reflect on Lisa Redd, the prosecutor did not create an imaginary script or create a scenario of facts not in the record. The objectionable statements are not "golden rule" statements. The remarks that Orme claims were inappropriate are not of the same nature or egregiousness as those previously deemed improper by this Court. See, e.g., Urbin v. State, 714 So.2d 411, 421 (Fla.1998) (determining that the prosecutor had engaged in a "subtle `golden rule' argument" by creating an imaginary script demonstrating that the victim was shot while pleading for his life); Garron v. State, 528 So.2d 353, 358-59 (Fla.1988) (finding improper argument where the prosecutor invited the jurors to imagine themselves in the place of the victim).
The prosecutor's comments also did not encourage jurors to "do their duty" for the community or "send a message" through their sentencing decision. See, e.g., Cox v. State, 819 So.2d 705, 718 (Fla.2002) (determining that prosecutor's grandiose statement that he represented the law-abiding people of the community was not the type of intolerable argument that appeals to the emotions and fears of the jury). Although the prosecutor did tell the jurors that they were there on behalf of the community, the argument stopped short of what was found to be objectionable in other cases. See, e.g., Campbell v. State, 679 So.2d 720, 724-25 (Fla.1996) (finding error in the prosecutor's statement that "[t]he death penalty is a message sent to a number of members of our society who choose not to follow the law"); Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985) (finding error in the prosecutor's statement that "[a]nything less in this case would only confirm what we see running around on the bumper stickers of these cars, and that is that only the victim gets the death penalty").
Orme also argues that the comments made about the victim are impermissible "victim impact testimony" that amounts to nonstatutory aggravation and may not be considered and weighed by the jury. The prosecutor described the victim as "a young nurse just finishing her studies, just completing her exam, trying to raise a son, trying to come help a friend *740 who complained of being sick." This does not amount to nonstatutory aggravation as Orme complains. Rather, the statement shows the victim's uniqueness as an individual. Such statements are permissible under section 921.141(7), Florida Statutes (1999) (allowing the State to introduce victim impact evidence, which shows "the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death"); see also Damren v. State, 696 So.2d 709, 713 (Fla.1997) (quoting section 921.141(7), Florida Statutes (1993)); Bonifay v. State, 680 So.2d 413, 419 (Fla.1996); Windom v. State, 656 So.2d 432, 438 (Fla.1995). Orme has failed to demonstrate that any of the comments were error, and certainly they were not fundamental error. Appellate counsel's failure to argue these points does not amount to deficient conduct.

Gruesome Photographs
Orme next argues that appellate counsel was ineffective for failing to raise on appeal the claim that the trial court erroneously allowed forty-three gruesome photographs to be shown to the jury. Trial counsel objected to the admission of the photographs. The photos were admitted after the medical examiner explained that they demonstrated injury and the extent of the injury. Although the issue was preserved for appellate review, appellate counsel was not ineffective for failing to raise an issue that was meritless. See, e.g., Armstrong v. State, 862 So.2d 705, 720 (Fla.2003), cert. denied, ___ U.S. ___, 124 S.Ct. 2161, 158 L.Ed.2d 757 (2004). The admission of photographic evidence is within the discretion of the trial court, and the trial court's ruling will not be disturbed on appeal absent a clear showing of abuse. See Rutherford, 774 So.2d at 646. We have reviewed the photographs at issue and the record, and find that the trial court did not abuse its discretion. See id. at 647 (finding that photographs were relevant to a medical examiner's testimony to show manner of death, location of wounds, and identity of victim). We therefore deny relief on this claim.

Other Claims
Orme raises five additional claims, all of which were either raised on direct appeal or in postconviction or should have been raised and are now procedurally barred. See Breedlove v. Singletary, 595 So.2d 8, 10 (Fla.1992) ("Habeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been ... or were raised on direct appeal"); see also Mills v. Dugger, 574 So.2d 63, 65 (Fla.1990). Orme argues that because of his mental illness and intoxication, he lacked the intent necessary for first-degree murder. Issues involving the defendant's mental state and his intent were raised on direct appeal and during the postconviction proceeding. Therefore, theses claims cannot be relitigated in a habeas petition. The other issues, improper burden-shifting, the adequacy of certain jury instructions, the State's introduction of nonstatutory aggravating circumstances, and the diminution of the jury's sense of responsibility, were all raised and addressed in the trial court's denial of postconviction relief. Therefore, none of these claims are properly raised in this habeas proceeding. Habeas relief is denied. See Porter v. State, 788 So.2d 917, 921 (Fla.2001); Breedlove, 595 So.2d at 10; Mills v. Dugger, 574 So.2d at 65.

CONCLUSION
For the reasons set forth above, we reverse the trial court's order denying postconviction relief based on ineffective assistance of counsel during the penalty phase for the failure to investigate and present Orme's bipolar disorder diagnosis. We remand this case to the trial court for *741 a new penalty phase proceeding. On all other claims raised in Orme's appeal of the denial of his postconviction motion, we affirm. We also deny relief on all claims raised in Orme's petition for writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and ANSTEAD, QUINCE, LEWIS, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, J., concurring in part and dissenting in part.
I dissent from the decision to grant a new penalty phase on the basis of the majority's determination that counsel was ineffective in respect to the bipolar disorder. The trial judge held an evidentiary hearing on this issue In denying relief, the trial judge stated:
After lengthy testimony at the evidentiary hearing from two psychologists and two psychiatrists called by the Defendant and one psychiatrist and lengthy DOC medical records presented by the State, the key issue remains. Was Mr. Smith ineffective as Defendant's counsel by not presenting bipolar disorder as a defense during the guilt phase and as a mitigator during the penalty phase? At best, the expert testimony revealed that bipolar disorder diagnosis has been ever changing in the psychological and psychiatrist profession since Defendant's trial in 1993. At the evidentiary hearing, among professionals there was still much disagreement on how to diagnosis Mr. Orme back in 1993 or presently, even with additional information. However, all agreed that Defendant was addicted to cocaine and the drug addition was a factor in his murder trial. That issue is what Mr. Smith presented to the jury. At the penalty phase Dr. McClane testified that, in his opinion, both statutory mental mitigators applied to Orme. The jury heard this testimony before they made their death penalty recommendation. And this Court considered both mental mitigators in rendering sentence.
The Defendant in closing argument relied heavily on Phillips v. State, 608 So.2d 778 (Fla.1992), for the proposition that Defendant should at least receive a new sentencing proceeding. Phillips is distinguishable from the instant case on two major issues: 1) trial defense counsel in Phillips admitted he was ineffective in that he did virtually no preparation at the penalty phase of the trial and the State conceded that counsel's performance was deficient and 2) no mental mitigation was presented to the jury. In the instant case, trial counsel was prepared and called professional testimony in the form of one psychiatrist and one psychologist plus family witnesses. Dr. McClane did testify that both statutory mental mitigators applied to Orme during the penalty phase.
To prevail on a claim of trial counsel's ineffectiveness, both substandard performance and prejudice caused by the performance must be shown. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To meet the Strickland test, a defendant has the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the complained about conduct was not the result of a strategic decision. Id. at 688-89, 104 S.Ct. 2052. A defendant must demonstrate "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. Defendant has failed to meet this standard.
*742 State v. Orme, No. 92-442CF, order at 2-3 (Fla. 14th Cir. Ct. order filed March 8, 2002). The trial judge had these witnesses before her and evaluated the weight which should be afforded to this testimony. This was within the province of the trial judge, and the majority errs in substituting its judgment for hers. I would affirm the trial judge's decision because I find it to be based upon competent, substantial evidence and the precedent of this Court. Gaskin v. State, 822 So.2d 1243 (Fla.2002); Cherry v. State, 781 So.2d 1040 (Fla.2000); Asay v. State, 769 So.2d 974 (Fla.2000).
I concur in the majority's affirmance of the trial court on the other rule 3.851 motion issues and in the denial of the petition for writ of habeas corpus.
NOTES
[1] The affidavits were provided by Brenda Reed, a fellow student at Gulf Coast Community College. Orme became good friends with Reed's husband. Reed stated that Orme would go through periods of drive and confidence and then he would suddenly abandon all his goals, lose confidence, and give up. Orme's brother, Eric Orme, provided an affidavit that described Orme's mood swings, that Orme would make big plans for himself and then other times he would act like no one loved him; he would stay inside the house and eat all the time when he was depressed. Richard Gibbens, Orme's coworker in 1979 and 1980, stated that they worked together on offshore boats in the merchant marine. When Orme was depressed, he would stay in his bunk all the time and could not seem to function. He stated that he thought Orme would use illegal drugs to bring himself out of the depression. He also stated that Orme's trial counsel had contacted him before the trial, that the lawyer asked him to testify and he agreed, and that the lawyer did not call him back to do so. After Orme was found guilty, the lawyer called Gibbens again to testify at the penalty phase, and again, the lawyer did not call him back to do so. Another coworker on offshore boats was Grover C. Stamps. In Stamps' affidavit, he stated that Orme was a good captain and worked hard, that he had dramatic mood swings, and that he would go through severe depressions and then would have happy times. During his depression, Orme would sleep, and during happy times, he was very outgoing.
[2] Orme also alleges that Smith was ineffective in failing to seek a continuance of the trial because Smith was overburdened with several first-degree murder trials when he had to take on Orme's case. The record does not establish that Smith's failure in his investigation and presentation of Orme's defense was a result of his failure to request a continuance. Thus, the evidence does not support this particular claim. Because we find no deficient performance in Smith's failure to request a continuance, we need not examine this claim for its prejudicial effect. See Stewart v. State, 801 So.2d 59, 65 (Fla.2001) (finding that because Strickland requires the establishment of both prongs, when a defendant fails to show one, it is not necessary to consider the other).
[3] Orme raised this claim in his postconviction motion as well. The trial court denied these claims as procedurally barred because they could have been raised on direct appeal, citing Atwater v. State, 788 So.2d 223, 228 (Fla.2001).