PER CURIAM.
Roderick Michael Orme appeals an order of the trial court sentencing him to death following resentencing. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm the death sentence.

FACTS AND PROCEDURAL HISTORY

We summarized the facts of this case on Orme’s previous direct appeal as follows:
Roderick Michael Orme had an extensive history of substance abuse for which he previously had sought treatment at a recovery center in Panama City. On the morning of March 4, 1992, Orme suddenly appeared at the center again, despite a lapse of about a year since his prior treatment. He was disoriented and unable to respond to questions, but he did manage to write a message. It was “LEE’S MOT RM15.” While a breathalyzer returned negative results, Orme’s blood tested positive for cocaine and he was showing signs of acute cocaine withdrawal. He was cold, his face was flushed, and he was exhibiting symptoms like delirium tremens. An attending physician placed Orme in intensive care for thirty hours. Illegal barbiturates were found in Orme’s possession.
Lee’s Motel was located only a few blocks from the recovery center. Someone at the center telephoned the motel and said that a man who sounded hysterical had said to check room 15. The owner did so and found the body of a woman who had been badly beaten.
Semen was found in the victim’s orifices, but DNA testing could not identify a DNA match. One sample taken from the victim’s panties, however, held material that matched the pattern of Orme’s DNA. Orme’s underpants also had a mixed blood stain matching both Orme and the victim’s genotype. Orme’s fingerprints were found in the motel i-oom, and his checkbook and identification card were found in the victim’s car, which was parked outside.
The cause of death was strangulation. There were extensive bruising and hemorrhaging on the face, skull, chest, arms, left leg, and abdomen, indicating a severe beating. The abdominal hemorrhaging extended completely through the body to the back and involved the right kidney. Jewelry the victim always wore was missing and was never found. Police later identified the body as that of Lisa Redd, a nurse.
Orme acknowledged that he had summoned Redd to his motel room the day she was killed because he was having a “bad high” after free-basing cocaine. Orme and Redd had known each other for some time, and Orme called her because she was a nurse.
*541 On March 4,1992, Orme told police he had last seen Redd twenty minutes after she arrived at his motel. Orme said she had knocked a crack pipe from his hands, apparently resulting in the loss of his drugs. He left to go partying soon thereafter. In this statement, he also said that this was the first time he had abused cocaine since 1990 and that he did not remember being at the addiction recovery center.
The following day Orme gave a lengthier statement to police. In this one, he said that Redd had arrived at his motel room between 9 and 10 p.m. She slapped his crack pipe out of his hands and swept several pieces of crack into the toilet. Orme said he then took the victim’s purse, which contained her car keys, and drove away in her car. Orme said he left and returned several times and that it was still dark when he realized something was wrong with Redd. The last time he returned, however, he could not enter because he had left the motel key inside the room.
Orme was arrested on March 6, 1992, after his release from the hospital. On March 26, 1992, he was charged by indictment with premeditated or felony murder, robbery, and sexual battery.
At trial, Orme testified that Redd had arrived at his motel room at 7, 8, or possibly 8:30 p.m. He again said he returned to the motel room at some point. At this time he realized Redd’s body was cold and that something was wrong. But he said the next thing he remembered was being in the hospital.
Robert Pegg, a cab driver, testified at trial that he had picked up Orme at Lee’s Motel around 8 p.m.
A man who lived across from the motel, Joseph Lee, also testified. He said that he generally kept track of what was happening at the motel and had first noticed the victim’s automobile there around 9:30 or 10 p.m. Lee said he saw Orme leave and return several times. Before going to bed around 2 a.m., Lee said he saw Orme leave in the victim’s car once more.
Another witness, Ann Thicklin, saw someone slowly drive the victim’s car into Lee’s Motel around 6:15 a.m.
The jury convicted Orme on all counts and recommended death by a vote of seven to five. The defense waived the mitigator of no prior criminal history and asked for the jury to be instructed on the age mitigator, the two statutory mental mitigators (substantial impairment and extreme emotional disturbance), and the catch-all mitigator. The state asked for three instructions: murder committed in the course of a sexual battery; heinous, atrocious, or cruel; and pecuniary gain.
Shortly before sentencing, the defense asked the court to consider the “no significant prior criminal history” factor based on the presentence investigation (“PSI”) and penalty-phase testimony. The defense stated that it had waived the factor to prevent the State from introducing a rebuttal witness about an alleged prior sexual assault committed by Orme.
The trial court stated that it had considered this motion. Shortly thereafter the judge sentenced Orme to death, finding all three aggravators argued by the State. In mitigation, the trial court found both statutory mental mitigators and gave them “some weight,” but concluded they did not outweigh the case for aggravation. The Court rejected the other factors argued by Orme: his age (30), his love for his family, an unstable childhood, potential for rehabilitation, and good conduct while awaiting trial.
*542 Orme v. State, 677 So.2d 258, 260-62 (Fla.1996). On direct appeal, Orme raised eight issues.[1] This Court affirmed Orme’s conviction of first-degree murder and the sentence of death. Id. Orme filed a petition for writ of certiorari with the United States Supreme Court. That Court denied review on January 13, 1997. Orme v. Florida, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997).
Subsequently, Orme filed an amended motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851, raising twenty-five claims. After an evidentiary hearing on four claims of ineffective assistance of trial counsel, the trial court denied relief. Orme appealed the denial of postconviction relief to this Court, raising three claims.[2] He also petitioned the Court for a writ of habeas corpus, raising eight claims.[3] See Orme v. State, 896 So.2d 725 (Fla.2005). This Court found defense counsel ineffective for failing to further investigate Orme’s diagnosis of bipolar disorder with respect to the penalty phase. As a result, a new penalty phase was ordered. Id.
In May 2007, a new penalty phase was conducted before a new jury, but before the original trial judge. By a vote of eleven to one, the new jury recommended a death sentence. The trial court followed the jury’s recommendation and sentenced Orme to death. The trial court found the following three statutory aggravating factors: (1) the capital felony was committed for pecuniary gain; (2) the capital felony was committed while the defendant was engaged in the commission *543 of, or an attempt to commit, or flight after committing or attempting to commit a sexual battery; and (3) the capital felony was especially heinous, atrocious, or cruel. The trial court also found three statutory mitigators: (1) the defendant had no significant criminal history (little weight); (2) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance (little weight); and (3) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired (little weight). The trial court also found that the following mitigation was either irrelevant to the murder or did not exist and, as a result, gave them no weight: (1) the age of the defendant; (2) a bipolar disorder contributed significantly to the defendant’s substance abuse; (3) the defendant had a difficult childhood; (4) the defendant is a model prisoner; (5) the defendant’s potential for rehabilitation; and (6) the defendant tried to get the victim help.
On appeal, Orme presents nine claims. In addition to the claims asserted by Orme, the Court must also review the proportionality of the death sentence.

ANALYSIS

Consideration of Remorse as a Mitigator

Orme contends that the trial court erred in refusing to allow him to challenge for cause prospective jurors who could not consider remorse as a mitigator. During voir dire, defense counsel asked one of the prospective jurors whether evidence of Orme’s remorse could be significant in considering the case. The prosecutor objected. At first, the trial court sustained the objection and held that such a question about remorse was not appropriate during voir dire. However, after both the prosecutor and the trial judge acknowledged that remorse could be considered as a mitigator in sentencing, the trial judge held that defense counsel could inquire into remorse, but could not ask the jury what weight they would give it. However, in doing so, the trial judge also ruled that if a juror could not consider remorse as mitigating, it could only be a basis for a peremptory challenge, not a challenge for cause.
We agree with Orme that the trial court erred in holding that a juror’s refusal to consider remorse as a mitigator could only be a basis for a peremptory challenge. However, we find that the claim is not preserved for appeal because defense counsel failed to question any of the prospective jurors about their consideration of remorse as mitigation for the remainder of voir dire after the trial court ruled on the issue. To preserve the claim for appeal, counsel had to question the prospective jurors about whether they could consider remorse as a mitigator and then attempt to challenge the juror for cause if the juror answered that he or she could not consider remorse as a mitigator. Therefore, relief is not warranted on this claim.
Orme also asserts that the trial court erred in failing to consider Orme’s remorse as a mitigator in its sentencing order. This Court has consistently held that the trial court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence. Griffin v. State, 820 So.2d 906, 913 (Fla.2002) (quoting Campbell v. State, 571 So.2d 415 (Fla.1990)). However, “a defendant must raise a proposed nonstatu-tory mitigating circumstance before the trial court in order to challenge on appeal the trial court’s decision about that non-statutory mitigating factor.” Davis v. State, 2 So.3d 952, 962 (Fla.2008). In the *544 instant case, Orme filed a supplemental sentencing memorandum after the Spencer[4] hearing in which he requested the trial court to consider remorse as a mitigator. In that memorandum, Orme argued that he expressed his genuine remorse for his actions at the Spencer hearing and accepted responsibility for the crime. We agree with Orme that the trial court failed to expressly evaluate remorse in its sentencing order even though Orme proposed remorse as a mitigating circumstance and expressed his remorse at the Spencer hearing. However, we hold that any error on the trial court’s part in failing to consider remorse as a mitigating circumstance constitutes harmless error. The trial court found three aggravators: (1) the murder was especially heinous, atrocious, or cruel (HAC); (2) commission during a sexual battery; and (3) commission for pecuniary gain. The mitigation in the case was relatively weak. Therefore, even if the nonstatutory mitigator of remorse had been considered, the mitigating evidence would not have outweighed the aggrava-tors. See Singleton v. State, 783 So.2d 970, 977 (Fla.2001) (holding that trial court’s error in failing to address nonstatu-tory mitigation was harmless because the mitigators would not outweigh the aggravation in the case); see also Bates v. State, 750 So.2d 6 (Fla.1999).
Inquiry of Prospective Jurors — Mercy
Orme contends that the trial court erred in refusing to allow Orme to inquire of prospective jurors whether they could consider recommending a life sentence as a matter of mercy even if the aggravators outweighed the mitigation. The State argues that the trial court did not commit error because although the trial court initially denied defense counsel the opportunity to question prospective jurors about mercy during the first stage of jury selection, the trial court allowed counsel to question jurors about their willingness to consider mercy during the second stage of jury selection. We agree.
During the first stage of voir dire, defense counsel asked two prospective jurors whether the consideration of mercy had a part in the sentencing proceedings. After the first juror stated that he could not consider mercy, defense counsel challenged him for cause, which the trial court denied. Defense counsel then asked another juror the same question. The prosecutor objected, and the trial court sustained the objection and restricted defense counsel’s questions regarding mercy. Later during voir dire, defense counsel asked the trial court to reconsider the ruling restricting his ability to inquire about mercy. The trial court agreed to allow defense counsel to revisit the issue of mercy during the second stage of voir dire. After this ruling, although still during the first stage, defense counsel questioned three more prospective jurors about mercy without objection from the State, and then asked two different groups of prospective jurors during the second stage whether they could consider mercy. None of the prospective jurors indicated that they could not consider mercy in the case.
Orme concedes that the trial court allowed him to question prospective jurors about mercy and he did, in fact, ask the jurors about mercy. However, he argues that because the parties resumed their argument about the role of mei*cy during the second stage of jury selection, he was never able to raise the issue of mercy afterwards due to the trial court’s ruling. The record demonstrates that after defense counsel asked the last set of fourteen jurors about mercy, the parties resumed *545 their argument about the role of mercy. The trial court ended the argument by ruling that the prosecutor could not bring up the issue of mercy unless defense counsel raised the issue. Orme now argues that he was never able to raise the issue of mercy after this decision because he did not want the State to make improper comments about the governor being the only one who could exercise mercy.[5] However, we find the issue is not preserved for appeal because after the trial court’s decision, Orme did not attempt to question the jurors about mercy for the rest of voir dire. Accordingly, relief is not warranted.
The more troubling issue is the prosecutor’s comments during voir dire on how the trial judge could not consider mercy in his decision and the governor was the only person who could exercise mercy by way of a clemency hearing. We find that these statements by the prosecutor were improper and misleading to the jury. Thus, the trial court erred in overruling defense counsel’s objection to the prosecutor’s statements. However, we hold that the statements constitute harmless error because none of the prospective jurors indicated they could not consider mercy, the jury recommended a death sentence by a vote of eleven to one, and the trial court found the three aggravators outweighed the relatively weak mitigation. Accordingly, relief is not warranted.

Refusal to Dismiss Venire

Orme argues that the trial court erred in failing to dismiss the venire after one prospective juror indicated he was opposed to a life sentence without the possibility of parole for twenty-five years because Orme had been convicted fifteen years ago. We deny relief because the trial court properly instructed the jury on this matter.
During voir dire, one of the prospective jurors expressed his concern that parole was a possibility after twenty-five years because Orme committed the crime fifteen years ago. Defense counsel then moved to strike the venire panel, arguing that the prospective juror poisoned the entire pool by stating that Orme had been convicted fifteen years ago. The State then suggested that the trial court could remedy the situation by giving a special instruction to explain the sentence of life without the possibility of parole for twenty-five years according to this Court’s decision in Green v. State, 907 So.2d 489 (Fla.2005). The trial court then denied the motion, but read the agreed-to instruction to the jury.
The trial court’s decision on whether to dismiss a venire is reviewed for an abuse of discretion. Hernandez v. State, 4 So.3d 642 (Fla.), cert. denied, — U.S. —, 130 S.Ct. 160, 175 L.Ed.2d 101 (2009). Also, “[i]n order for the statement of one venire member to taint the panel, the venire member must mention facts that would not otherwise be presented to the jury.” Johnson v. State, 903 So.2d 888, 897 (Fla.2005). In the instant case, the prospective juror did not mention a fact that would not otherwise be presented to the jury. The fact that Orme had committed the crime in 1992 was a fact presented to every prospective juror in the State’s brief explanation of the case during voir dire. Therefore, the trial court did not abuse its discretion in denying the defense’s motion to dismiss the venire.
Orme further argues that although the trial court provided a jury instruction to clarify that there was no guarantee that *546 Orme would be paroled after twenty-five years if given a life sentence without the possibility of parole for twenty-five years, this instruction should have been given at the beginning of voir dire. However, the trial court followed the procedure used by the trial court and affirmed by this Court in Green.[6] The trial court used the same language used by the trial court in Green and explained to the jury that it was not guaranteed that the defendant would be granted parole after twenty-five years. Such an instruction actually favored Orme because it “served to remind any jurors leaning towards the death penalty based on the perception that [Orme] could be paroled in the near future due to the credit for time served that [Orme] could stay in jail for a longer period of time and that there was no guarantee that he would in fact be paroled.” Id. at 498-99. Even though this instruction was not provided at the beginning of voir dire, it still remedied and clarified the concern that several of the prospective jurors had with the sentencing option of life without the possibility of parole for twenty-five yeai's. See Thompson v. State, 619 So.2d 261 (Fla.1993) (finding that the trial court did not commit error in failing to strike the venire after it became apparent that one of the jurors was concerned that the defendant could be released within twelve years if given a life sentence).
We find that the trial court did not err in failing to strike the venire.

Waiver of Right to Sentencing Option of Life in Prison 'without Possibility of Parole for Twenty-five Years

Orme contends that the trial court erred in refusing to allow him to waive his right to the sentencing option of life in prison without the possibility of parole for twenty-five years in favor of a harsher punishment of life in prison without the possibility of parole. In making this argument, Orme is essentially urging the Court to recede from its majority decision in Bates v. State, 750 So.2d 6 (Fla.1999), and adopt the dissenting opinion in Bates. We decline to do so.
Before May 25, 1994, defendants convicted of capital murder faced two sentencing options: death or life in prison without the possibility of parole for twenty-five years. § 775.082(1), Fla. Stat. (1993). However, in 1994, the Legislature enacted chapter 94-228, Laws of Florida, section 1, which amended the statute to replace the option of life in prison without the possibility of parole for twenty-five years with life in prison without eligibility for parole. § 775.082(1), Fla. Stat. (Supp.1994). This amendment applies to offenses committed on or after May 25, 1994. See In re Standard Jury Instructions in Criminal Cases, 678 So.2d 1224, 1224 n. 1 (Fla.1996). Because Orme committed the crime in *547 1992, his two sentencing options were death or life in prison without the possibility of parole for twenty-five years. However, Orme wished to waive his right to the sentencing option of life in prison without the possibility of parole for twenty-five years in favor of a harsher punishment of life in prison without the possibility of parole.[7]
In Bates, the defendant raised a similar issue-whether the trial court’s refusal to instruct the sentencing jury that life without the possibility of parole was a sentencing alternative to death denied him due process and a fundamentally fair capital sentencing proceeding. 750 So.2d at 9. This Court applied the rules of statutory construction and stated that “without clear legislative intent to the contrary, a law is presumed to apply prospectively.” Id. at 10. The Court then applied that rule to section 775.082(1), Florida Statutes (1995), and found that there was “no unequivocal language that the Legislature intended this amendment [to section 775.082(1) ] to apply retroactively.” Id.
As we stated in Bates, under the rules of statutory construction, there must be a clear expression of intended retrospective application. See State v. Lavazzoli, 434 So.2d 321 (Fla.1983). In the instant matter, the Legislature did not, by clear and unequivocal language, express its intent for section 775.082(1), Florida Statutes (1995), to apply retroactively. Additionally, in In re Standard Jury Instructions in Criminal Cases, we recognized that the 1994 amendment applied to offenses committed on or after May 25, 1994. As a result, Orme is not eligible to receive a life sentence without the possibility of parole. See Hudson v. State, 708 So.2d 256 (Fla.1998) (the 1994 amendment to section 775.082(1) cannot be applied retroactively); Craig v. State, 685 So.2d 1224, 1230 n. 12 (Fla.1996) (because the defendant committed his crime in 1981, he was not eligible to receive a life sentence without the possibility of parole); Gore v. State, 706 So.2d 1328 (Fla.1997).
Because Orme was not eligible to receive the sentencing option of a life sentence without the possibility of parole and because there is no reason for us to recede from precedent on this issue, relief is denied on this claim.

Mitigation

In this claim, Orme argues that the trial court erred by failing to give weight to Orme’s difficult childhood, to the fact that Orme was a model prisoner, to Orme’s potential for rehabilitation, and to Orme’s attempt to get the victim help.
In Fennie v. State, 855 So.2d 597, 608 (Fla.2003), we reiterated the procedural requirements that a trial court must follow in its sentencing order in a capital case. A trial judge must
(1) expressly evaluate in his or her written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature; (2) assign a weight to each aggravating factor and mitigating factor properly es *548 tablished; (3) weigh the established aggravating circumstances against the established mitigating circumstances; and (4) provide a detailed explanation of the result of the weighing process.
With regard to mitigating circumstances, “A trial court may reject a claim that a mitigating circumstance has been proven provided that the record contains competent, substantial evidence to support the rejection.” Hurst v. State, 819 So.2d 689, 697 (Fla.2002); see also Mansfield v. State, 758 So.2d 636, 646 (Fla.2000). Moreover, in Trease v. State, 768 So.2d 1050, 1055 (Fla.2000), we receded from our decision in Campbell v. State, 571 So.2d 415, 420 (Fla.1990), and held that trial courts may assign no weight to a mitigating factor. In doing so, we recognized that a trial judge “may not preclude from consideration any evidence regarding a mitigating circumstance that is proffered by a defendant in order to receive a sentence of less than death.” However, there are circumstances where although a mitigator may be relevant and must be considered by the trial judge because it is generally recognized as a mitigator, the judge “may determine in the particular case at hand that it is entitled to no weight for additional reasons or circumstances unique to that case.” Trease, 768 So.2d at 1055.
In the instant case, the trial judge found that having a difficult childhood was not relevant to the murder and assigned it no weight. In finding that the mitigator had no relevance to the murder, the trial judge stated the following in its sentencing order: “The defendant came from a divorced family and he was not raised by his biological mother, however, the defendant was raised by a loving and caring stepmother.”[8] We find that although the trial court’s treatment of this mitigator was improper, the error was harmless given the severity of the three aggravators in the case and other relatively weak mitigation.
Several defense witnesses testified concerning Orme’s father’s violent and abusive behavior. They testified that Orme’s father was a violent man who abused people verbally, demeaned them, and belittled them, especially Orme, Orme’s stepbrother, Eric, and Orme’s biological mother, Linda Henley. Orme’s stepmother, Carol Orme, specifically testified that she believed Orme’s father suffered from bipolar disease and depression and that when he was depressed, he was a “fighter.” According to Carol, his father was diagnosed with depression and anxiety and had medicine prescribed. Linda testified that when she divorced Orme’s father, the father convinced her to let him have custody of Orme, but then he made it very difficult for her to visit Orme. When she found out that Orme’s father was going to move out of state and take Orme with him, she went to the school and took him out. Six months later, Orme’s father went to the school and grabbed him and when the teacher tried to stop him, he punched her in the mouth and took off with Orme. After that incident, Linda did not see Orme for ten years. When they reunited ten years later, Orme explained to Linda that he thought she had stopped loving him be *549 cause his father told him that she did not want him and that she had sold him for a new car.
Thus, the record demonstrates that there was an abundance of evidence about Orme’s father’s violent temper and verbal abuse as well as his diagnosis for depression and anxiety. However, the trial court failed to discuss any of this evidence in its sentencing order. The trial court’s statement that Orme’s parents were divorced but that he had a loving stepmother was an insufficient analysis of this mitigator. Even though the trial court erred in its treatment of this mitigator, we find the error harmless. See Hurst, 819 So.2d at 699. The trial court found three significant aggravators—HAC, pecuniary gain, and commission during a sexual battery— compared to relatively weak mitigation. Even if we consider the difficult childhood with the other mitigation, it does not change the balance of the aggravating and mitigating circumstances.
Orme also challenges the trial court’s decision that the model prisoner mitigator was not relevant to the murder and to give it no weight. As to this miti-gator, the trial court found: “The defendant has exhibited model behavior while in prison. He only has minor disciplinary reports, however, one including possession of marijuana.”[9]
During the resentencing proceeding, only one witness, a retired Florida prison warden, provided testimony as to Orme’s “model prisoner” behavior. He testified that Orme had been an absolutely model prisoner compared to other prisoners across the board and that his disciplinary issues were very low and minor. However, he also admitted that he never met Orme or observed him in prison; he only reviewed documents involving Orme’s time in prison. He further admitted that Orme did have two disciplinary reports, one involving possession of marijuana and another involving Orme throwing a tray of food on the floor because the food was not cooked properly. The possession of marijuana in prison is significant because he was in maximum custody, had a history of substance abuse problems, and had been in and out of detox because of the abuse. Under these circumstances, we find no error in the trial court’s decision regarding this mitigating factor.
The trial court also found that the potential for rehabilitation mitigator was not applicable.[10] As the court noted, Orme was addicted to illegal drugs for over ten years and had received in-patient treatment for the addiction, but he continued to use drugs and the attempt at rehabilitation did not stop the murder. Moreover, we note that the defense failed to present any evidence to demonstrate that Orme had potential for rehabilitation. Family members testified that Orme began using drugs when he entered college and had been addicted since then. He was admitted to a detox center to get treated for the addiction, but on the night of the murder, Orme still chose to buy and abuse cocaine. Therefore, the trial court did not err in rejecting this mitigating circumstance.
Orme’s final contention under this claim is that the trial court erred in rejecting the “trying to get victim help” mitigator. To support this mitigator, the *550 defense provided the testimony of an employee at Reliance House, the detox center where Orme showed up on the morning after the murder. The employee testified that when Orme walked in that morning, he was unable to speak, but wrote on a piece of paper “Lee’s Mot Rm 15.” This evidence of writing a note indicating where Redd was is not enough to prove that Orme tried to get Redd help. Moreover, the mitigator is contravened by other evidence in the record that demonstrates that Orme did not try to help Redd until many hours after he left her dead in the motel room, took her car, and went riding around town with another woman. Accordingly, we affirm the trial court’s decision rejecting this as a mitigating circumstance.[11]

Pecuniary Gain Aggravator

Orme contends that the trial court erred in finding the pecuniary gain aggra-vator because the taking of Redd’s property was not an integral part of the murder. To establish the pecuniary gain aggravator, the State must prove beyond a reasonable doubt that “the murder was motivated, at least in part, by a desire to obtain money, property, or other financial gain.” Green v. State, 907 So.2d 489, 500 (Fla.2005) (quoting Finney v. State, 660 So.2d 674, 680 (Fla.1995)). In its sentencing order, the trial court found that the pecuniary gain aggravator had been established based on evidence that demonstrated that Orme unlawfully took Redd’s purse, car, keys, money, necklace, and watch by force, violence, assault or putting her in fear.
The record demonstrates that the trial court’s finding of the pecuniary gain aggravator is supported by competent, substantial evidence. Willacy v. State, 696 So.2d 693 (Fla.1997) (recognizing that on appeal, this Court’s task is to review the record to determine whether the trial court applied the right rule of law for each aggravator and to determine whether competent, substantial evidence supports its finding). The State presented evidence to show that Orme did not have money left when he asked Redd to come to the motel to medically assist him. While Redd was in the motel room attempting to assist Orme, she threw Orme’s cocaine into the toilet at which point Orme got angry and proceeded to brutally beat, rape, and murder Redd. Afterwards, he left the room with Redd’s purse and keys, jumped into her car, and rode around for the rest of the night. At some point during the night, Orme picked up another woman and partied with her all night in Redd’s car. Orme did not return Redd’s car to the motel until the morning. Redd’s purse and the jewelry she always wore were never found after the murder. Because Orme had been using drugs the entire day of the murder and Redd had thrown away Orme’s unused cocaine, Orme’s motivation to kill Redd was, at least in part, due to his desire to obtain her money, jewelry, and car so he could ride around town, purchase more drugs, and party with the another woman all night. Moreover, the trial court convicted Orme of robbery, which was affirmed by this Court on direct appeal. The robbery conviction coupled with the evidence presented by the State that Orme took Redd’s purse and keys to joyride in her car all night after he murdered her provides competent, substantial evidence to affirm the trial court’s finding of the pecuniary gain aggravator.
*551 Accordingly, the trial court did not err in finding the pecuniary gain aggravator.

HAC Aggravator

Orme contends that the trial court erred in finding the murder to have been committed in an especially heinous, atrocious, or cruel (HAC) manner because the evidence did not show that he enjoyed the suffering of his victim. This Court has consistently held that the HAC aggravator does not necessarily focus on the intent and motivation of the defendant, but instead on the “means and manner in which death is inflicted and the immediate circumstances surrounding the death.” Brown v. State, 721 So.2d 274, 277 (Fla.1998); see also Stephens v. State, 975 So.2d 405 (Fla.2007). The HAC aggrava tor is proper “only in torturous murders— those that evince extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another.” Guzman v. State, 721 So.2d 1155, 1159 (Fla.2002); see also Cheshire v. State, 568 So.2d 908 (Fla.1990). The crime must be “conscienceless or pitiless and unnecessarily torturous to the victim.” Guzman, 721 So.2d at 1159 (citing Richardson v. State, 604 So.2d 1107 (Fla.1992)).
We find that the record supports the trial court’s conclusion that this murder was conscienceless and pitiless and was unnecessarily tortuous to Redd, both physically and emotionally. Dr. James Laurid-son, a forensic pathologist, testified that Redd had significant bruising all over her body, including her face, neck, arms, legs, and abdominal area, which came from blunt force trauma. He explained that the blunt trauma was of such force that it tore the blood vessels under the skin, which bled out and caused discoloration. The blunt force injury on the abdomen was deep enough to injure the tissue surrounding the kidney, causing a significant amount of hemorrhaging. Dr. Lauridson further testified that there was ecchymosis (bleeding on the white of the eye) and petechiae (small pinpoint hemorrhages on eyelids), which are commonly seen in asphyxia deaths when there has been strangulation. There was also a significant amount of hemorrhaging at all levels of the neck including the back of the neck, which was consistent with someone being strangled from the front and back. Dr. Leroy Riddick, the forensic pathologist called by the defense, agreed that the cause of death was manual strangulation. He further stated that there was definitely an altercation and a struggle; Redd did not just sit there and get strangled. He also testified that by looking at the injuries, Orme delivered approximately twenty-four blows to Redd.
Evidence of Redd’s struggle indicates that Redd was aware of her impending death. See Belcher v. State, 851 So.2d 678 (Fla.2003) (finding that the HAC ag-gravator applied and noting that although the victim was probably only conscious for sometime between thirty seconds and a minute before her strangulation and drowning death, the evidence of a struggle between the victim and her attacker established that she was likely conscious at the outset of the strangling and was aware of her impending death). Moreover, because strangulation of a conscious victim involves foreknowledge and the extreme anxiety of impending death, death by strangulation constitutes prima facie evidence of HAC. See Bowles v. State, 804 So.2d 1173, 1178 (Fla.2001) (“Strangulation of a conscious murder victim evinces that the victim suffered through the extreme anxiety of impending death as well as the perpetrator’s utter indifference to such torture. Accordingly, this Court has consistently upheld the HAC aggravator in cases where a con *552 scious victim was strangled.”); see also Mansfield v. State, 758 So.2d 636, 645 (Fla.2000).
The testimony elicited during the penalty phase regarding strangulation of Redd, her struggle, and the significant amount of bruising over her body provides competent, substantial evidence to support the finding of the HAC aggravator. Accordingly, we affirm the trial court’s finding of HAC.
Sexual Battery Aggravator
Orme asserts that the trial court erred in finding that the “murder was committed in the course of a sexual battery” aggravator applied. Orme concedes that he had sexual relations with Redd on the night she was murdered, but argues that the evidence failed to establish Redd’s lack of consent. In its sentencing order, the trial court concluded that Orme committed sexual battery upon Redd by oral, vaginal, and anal penetration without her consent and in the process used force or violence likely to cause personal injury to Redd.
We find that there is competent, substantial evidence to support the trial court’s finding of the sexual battery aggra-vator. Two investigators testified that Redd’s clothing was disheveled when she was found in the motel room, that is, her shirt was unsnapped and pulled up just below her breast; her pants were not fully up; her bra was twisted and above the breast; her panties were only on one leg. Also, a significant amount of blood was found in the backside of Redd’s panties and on the rectal, vaginal, and oral swabs performed on Redd. One of the medical examiners testified that the blood on Redd’s panties came from an injury to the lining of the rectum where there was hemorrhaging and abrasions. He testified that these injuries were consistent with unlubricated anal intercourse. He also emphasized that such a significant amount of blood would not be normal in everyday consensual anal intercourse. The testimony presented also reveals that there was a significant amount of bruising to Redd’s body, specifically her legs, arms, abdomen, and upper chest area. Additionally, Orme was convicted of sexual battery by a unanimous jury beyond a reasonable doubt, which we affirmed on direct appeal.
Accordingly, we find that the trial court did not err in finding the sexual battery aggravator. See Fitzpatrick v. State, 900 So.2d 495, 509 (Fla.2005) (rejecting the defendant’s contention that the sexual intercourse with the victim was consensual based on the evidence that the victim was found naked with her bloody undergarment wrapped around her waist near her breasts, her breasts were deep purple, and there was puffiness around her head, bruising on her arms, scratches covering her legs, and a cigarette burn on her leg).

Ring Violation

Orme raises the same Ring claim raised in his appeal of the denial of postconviction relief, but also recognizes that this Court has repeatedly rejected arguments that Ring has any application to Florida’s capital sentencing scheme. As we stated in Orme’s postconviction appeal and as Orme concedes, similar arguments have been addressed and rejected by this Court. Orme, 896 So.2d at 736-37; see also Fennie v. State, 855 So.2d 597, 607 n. 10 (Fla.2003); Doorbal v. State, 837 So.2d 940, 963 (Fla.2003). Moreover, Orme was convicted not only of first-degree murder, but also of two additional violent felonies: sexual battery and robbery. We have consistently found that Ring is satisfied when a defendant commits a murder in the course of an enumerated felony. See generally Parker v. State, 873 So.2d 270 (Fla.2004). Accordingly, relief is denied on this claim.

*553
Proportionality Assessment

While not challenged by Orme, the proportionality of the death sentence is an issue that this court must review in every death penalty case. Beasley v. State, 774 So.2d 649, 673 (Fla.2000). “[T]o ensure uniformity in death penalty proceedings, ‘we make a comprehensive analysis in order to determine whether the crime falls within the category of both the most aggravated and the least mitigated of murders, thereby assuring uniformity in the application of the sentence.’ ” Floyd v. State, 913 So.2d 564, 578 (Fla.2005) (quoting Anderson v. State, 841 So.2d 390, 407-08 (Fla.2003)).
Orme was convicted of murder, robbery, and sexual battery. The trial court found three aggravators: (1) HAC; (2) the capital felony was committed for pecuniary gain; and (3) the capital felony was committed during the commission of a sexual battery. The court also found three statutory mitigators: (1) the defendant had no significant criminal history (little weight); (2) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance (little weight); and (3) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired (little weight). Because we find that the trial court erred as to the difficult childhood mitigator, we also give proper consideration to that mitigator in the proportionality assessment.
We find that Orme’s sentence is proportional in relation to other death sentences that this Court has upheld. See Johnston v. State, 841 So.2d 349 (Fla.2002) (finding death sentence proportionate where defendant beat, raped, and strangled his victim and the trial court found four aggravators including the three that were found in the instant case, one statutory mitigator, and numerous nonstatutory mitigators); see also Bates v. State, 750 So.2d 6 (Fla.1999) (upholding death sentence where the Court found three aggravators, including that the murder was committed during a kidnapping and sexual battery, was committed for pecuniary gain, and was HAC, versus two statutory mitigators and several nonstatutory mitigators); Hauser v. State, 701 So.2d 329 (Fla.1997) (death sentence proportionate where victim was strangled and trial court found three ag-gravators of HAC, CCP, and pecuniary gain, balanced against one statutory miti-gator and four nonstatutory mitigators).

CONCLUSION

For the reasons stated above, we affirm Orme’s sentence of death.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
CANADY, J., specially concurs with an opinion, in which POLSTON, J., concurs.

.The following issues were raised: (1) the trial court should have directed a judgment of acquittal on grounds the case against him was circumstantial and the State had failed to disprove all reasonable hypotheses of innocence; (2) Orme's statements to officers should have been suppressed on grounds he was too intoxicated with drugs to knowingly and voluntarily waive his right to silence; (3) death is not a proportionate penalty because Orme's will was overborne by drug abuse, and because any fight between the victim and him was a "lover’s quarrel”; (4) Orme's mental state at the time of the murder was such that he could not form a "design” to inflict a high degree of suffering on the victim; (5) the trial court erred by failing to weigh in mitigation the fact that Orme had no significant prior criminal history; (6) the trial court erred in declining to give a special instruction that acts perpetrated on the victim after her death are not relevant to the aggravator of heinous, atrocious, or cruel; (7) the instruction on heinous, atrocious, or cruel violated the dictates of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992); and (8) Orme was incapable of forming the specific intent necessary for first-degree murder and this fact bars his death sentence under Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

. Orme argued that (1) the trial court erred in denying his ineffective assistance of counsel claim for trial counsel's failure to present evidence of Orme’s diagnosis of bipolar disorder; (2) his death sentence is unconstitutional pursuant to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and its progeny; and (3) the general juty qualifications procedure in Bay County, where he was tried, was unconstitutional. Orme v. State, 896 So.2d 725 (Fla.2005).

. Three of the claims Orme raised were: (1) appellate counsel was ineffective for failing to raise on appeal the fact that Orme was involuntarily absent from two bench conferences which he claims were critical stages of his trial; (2) appellate counsel was ineffective for failing to raise on appeal the claim that the prosecutor engaged in misconduct rendering the conviction and sentence fundamentally unfair; and (3) appellate counsel was ineffective for failing to raise on appeal the claim that the trial court erroneously allowed forty-three gruesome photographs to be shown to the juty. Orme raised five additional claims, all of which were found not to be properly raised in a habeas proceeding because they were either raised on direct appeal or in postconviction or should have been raised and were therefore procedurally barred. Orme v. State, 896 So.2d 725, 740 (Fla.2005).

. Spencer v. State, 615 So.2d 688 (Fla.1993).

. Immediately prior to the arguments about mercy, the prosecutor made comments to the prospective jurors about the governor being the only one that could grant mercy to the defendant.

. In that case, during the penalty phase, the trial court instructed the jury that they had to recommend either death or life without the possibility of parole for twenty-five years. During deliberations, the jury asked the trial judge whether the life sentence without the possibility of parole for twenty-five years started when the crime was committed in 1987 or if it started on that day of deliberations. The trial court provided the jury with the following answer: "The defendant, if sentenced to life without the possibility of parole for 25 years, would be entitled to credit for all jail served [sic] against a life sentence. However, there is no guarantee that the defendant would be granted parole at or after 25 years." Green, 907 So.2d at 496. On appeal, the defendant contended that the trial court improperly responded to a question posed by the penalty phase jury during deliberations. With regard to the second part of the response, the Court found that the trial court did not abuse its discretion for two reasons. First, the trial court's answer was not detrimental and was actually favorable to the defendant. Also, the trial court did not impermissibly comment on a question of fact, but instead answered a question of law. Id. at 498-99.

. After the trial court ruled that the proper instruction for the jury included a life sentence with eligibility for parole after twenty-five years, Orme requested that he be sentenced under the 1994 sentencing scheme. The trial court did not approve the request but stated that the issue could be revisited during trial. Subsequently, Orme filed a Motion to Include Life Without Eligibility for Parole on the Verdict Form which requested that the jury be informed of three sentencing options — life with the possibility of parole after twenty-five years, life without the possibility of parole, and death. The court denied the motion.

. Although it appears that the trial court found this nonstatutory mitigator but assigned it no weight, the language of the court's order is ambiguous and could be construed as rejecting this mitigator. We remind trial courts that rejecting a mitigator because it is not supported by the evidence is not the equivalent of assigning the mitigator no weight. As we have stated previously, a trial court may find that a mitigator is supported by the record, but nonetheless assign the mitigator no weight. See id. Alternatively, if competent, substantial evidence supporting the mitigator does not exist, there is no need for the trial court to engage in a weighing process of that mitigator.

. Similar to the "difficult childhood” miti-gator, the trial court's discussion of this miti-gator could be interpreted as either rejecting this mitigator or finding the mitigator and assigning it no weight.

. Although the trial court stated that it gave this mitigator no weight, it appears that the court found that the mitigator was not supported by the record as it stated that "this [mitigating] circumstance does not exist.”

. Again, the trial court gave this mitigator no weight but it appears that the mitigator was rejected by the court's language that "this [mitigating] circumstance does not exist.”